Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| JONATHAN RIVERA CRESPO; IRMARELIS ORTIZ VÁZQUEZ<br><br>EX PARTE<br><br><br>**IRMARELIS ORTIZ VÁZQUEZ**<br><br>Peticionaria | KLAN202500527 | ***Apelación* acogida como *CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: E DI2018-0162<br><br>Sobre: Divorcio Consentimiento Mutuo |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 23 de junio de 2025.

Comparece Irmarelis Ortiz Vázquez (en adelante, señora Ortiz Vázquez o peticionaria) mediante un recurso acogido como *certiorari*, para solicitarnos la revisión de la *Resolución* en reconsideración emitida el 7 de mayo de 2025 y notificada el día 12, del mismo mes y año, por el Tribunal de Primera Instancia, Sala Superior de Caguas.[1]

Por los fundamentos que expondremos, se *expide* el auto de *Certiorari* y se *revoca* la *Resolución* recurrida.

I

Surge de los autos ante nuestra consideración que las partes del título disolvieron su unión matrimonial mediante *Sentencia* de divorcio por consentimiento mutuo, dictada el 22 de febrero de 2018.[2] Producto de su relación matrimonial, procrearon al menor J.A.R.O. (en adelante, menor). Se desprende de la antedicha

---

[1] Apéndice 1 del recurso, a las págs. 1-2.
[2] Apéndice 2 del recurso, a las págs. 3-5.

Número Identificador

SEN2025_____

sentencia de divorcio que, como parte de los acuerdos alcanzados por las partes y autorizados por el foro de instancia, la patria potestad y custodia sobre el menor se ejercería de forma compartida entre ambos progenitores. En relación con la pensión alimentaria, cada parte sufragaría los gastos del menor. Por otro lado, los gastos extraordinarios, serían satisfechos a razón del 50% por cada progenitor. Además, se estableció que el menor contaba con el plan médico de la reforma de salud, pero que, una vez el aquí recurrido, el señor Jonathan Rivera Crespo (en adelante, señor Rivera Crespo o recurrido), estuviese trabajando en un empleo que proveyera plan médico, lo incluiría.

Seis (6) años más tarde, el 10 de mayo de 2024, la peticionaria incoó una *Moción* por derecho propio, en la cual esbozó que, para el momento en que las partes se divorciaron, el menor se encontraba recibiendo servicios educativos en 'Head Start' de forma gratuita.[3] Acotó que, en agosto del año 2022, el menor fue matriculado en una institución educativa privada y que, presuntamente, por acuerdo verbal entre las partes, el recurrido se comprometió a sufragar la totalidad de dichos gastos educativos, puesto a contaba con mayores ingresos. No obstante, lo anterior, el recurrido le indicó que, al momento, solo pagaría el 50%. La peticionaria alegó que no contaba con los ingresos para sufragar el restante de los gastos de educativos, los cuales incluían la matrícula, mensualidad, horario extendido y los almuerzos. Asi, pues, solicitó al Tribunal que corroborara si, en efecto, el recurrido cubriría el 100% del referido gasto educativo, y que, de lo contrario, se le notificara, para buscar otras alternativas.

---

[3] Apéndice 3 del recurso, a las págs. 6-7.

Examinada la moción, mediante *Orden,* notificada el 30 de mayo de 2024, el foro de instancia concedió veinte (20) días al recurrido para expresarse.[4] El recurrido no presentó escrito alguno.

Semanas más tarde, el 18 de junio de 2024, la peticionaria presentó una segunda *Moción* por derecho propio en la cual hizo referencia a su escrito del 10 de mayo de 2024. Alegó, en síntesis, haber llegado a un acuerdo con el recurrido, mediante el cual este último pagaría la matrícula, la mensualidad, el horario extendido y los almuerzos de la institución educativa privada en la cual estaba matriculado el menor, mientras que la peticionaria cubriría el costo de los libros y los efectos escolares. En virtud de lo expuesto, solicitó al foro primario que tomara conocimiento, que no señalara vista alguna y que diera por concluido este asunto.

En respuesta, mediante *Orden,* notificada el 27 de junio de 2024, el tribunal a quo dispuso lo siguiente:

> ESTA MOCI[Ó]N DEBER[Á] SER RADICADA CON LA FIRMA Y EL JURAMENTO DE AMBAS PARTES EN 20 D[Í]AS.[5]

Varios meses más tarde, el 3 de enero de 2025, la peticionaria incoó una tercera *Moción* por derecho propio.[6] En su escrito, alegó que, desde la disolución del vínculo matrimonial entre las partes, habían surgido gastos adicionales tales como vivienda, deportes, entre otros, por lo que solicitó se estableciera una pensión alimentaria a favor del menor para cubrir sus necesidades.

Evaluada la moción, el 13 de enero de 2025, el foro primario, emitió una *Notificación de señalamiento y citación a vista de manera presencial* ante el Examinador de Pensiones Alimentarias (EPA). En la misma, se ordenó a las partes del título a comparecer a una vista con el fin de atender un referido sobre revisión de pensión alimentaria ordenado por el Tribunal.[7]

---

[4] Apéndice 4 del recurso, a la pág. 8.
[5] Apéndice 6 del recurso, a las págs. 10-11.
[6] Apéndice 7 del recurso, a la pág. 12.
[7] Apéndice 8 del recurso, a la pág. 13.

Luego, el 5 de marzo de 2025, compareció el recurrido mediante una *Moción informativa y en solicitud de remedio*.[8] En su escrito, reseñó lo esbozado por la peticionaria en su moción del 18 junio de 2024, y la *Orden* notificada el 27 de junio de 2024. Alegó que dicha *Orden* fue notificada a una dirección incorrecta y que, por tal razón, no cumplió con la misma en el término provisto.

Adujo que, para éste, el acuerdo verbal era ley entre las partes y, a tenor, había cumplido con el mismo, y, en apoyo de lo anterior, adjuntó ciertos documentos a su escrito. Por otro lado, esbozó que él era quien se encargaba de todos los gastos del menor, salvo en muy pocas ocasiones. Por otra parte, destacó que, en el escrito presentado por la peticionaria el 3 de enero de 2025, esta presentó una versión distinta a lo acordado, sin presentar evidencia, y que dicho escrito no le fue notificado. Además, en su pliego, mostró inconformidad con el gasto relacionado a los deportes, puesto a que presuntamente se hizo sin contar con la anuencia de este. Igualmente, negó la necesidad del gasto de vivienda, bajo la premisa de que la custodia del menor era compartida. Así, pues, peticionó que se tomara conocimiento del acuerdo alcanzado por las partes, según había sido indicado por la peticionaria, y sobre la falta de notificación de escritos, lo cual impidió que este pudiese expresarse oportunamente. Solicitó, además, que se dejara sin efecto la vista ante el EPA, puesto a que todas las necesidades del menor se encontraban cubiertas.

Examinado el escrito del recurrido, mediante *Orden* emitida el 14 de marzo de 2025, notificada el día 17, del mismo mes y año[9] el tribunal *a quo* dispuso lo siguiente:

> Tomando en consideración esta moción informativa y la moción presentada por la parte peticionaria el 10 de mayo de

---

[8] Apéndice 9 del recurso, a las págs. 14-20.
[9] Apéndice 10 del recurso, a la pág. 21.

2024, se deja sin efecto la vista de revisión ante el Examinador de Pensiones Alimentarias.[10]

Días más tarde, el 18 de marzo de 2025, la peticionaria incoó una *Urgente moción para que se tenga por no puesta mociones no notificadas y solicitud de vista urgente ante oficial examinador de pensión alimenticia.*[11] Expuso en lo pertinente, que el escrito por el cual el Tribunal emitió la *Orde*n del 14 de marzo de 2025, no le fue notificado. Esbozó que la cancelación de la vista de revisión de pensión alimentaria atentaba contra el bienestar del menor. Puntualizó que su situación económica había cambiado. Subrayó que había tenido una merma de $600.00 dólares mensuales en sus ingresos. En apoyo a su pedimento, adjuntó ciertos documentos a su escrito. A tenor, solicitó que, con carácter de urgencia, se calendarizara una vista ante el EPA.

En respuesta, el 20 de marzo de 2025, el foro de instancia emitió una *Orden*, la cual fue notificada el 26 de marzo de 2025, en la cual refirió las partes a la *Orden* emitida el 14 de marzo de 2025. Es decir, la orden mediante la cual se dejó sin efecto la revisión de pensión alimentaria.

Luego, el 10 de abril de 2025, la peticionaria incoó una *Urgente solicitud de revisión de pensión alimentaria porque nunca se ha revisado dicha pensión y cambios económicos sustanciales.*[12] Expuso que la pensión alimentaria fue impuesta en el año 2018, y que, luego de haber transcurrido más de seis (6) años, la misma no había sido revisada formalmente. Puntualizó que sus escritos, presentados el 10 de mayo y 18 de junio de 2024, tuvieron el propósito de verificar si el recurrido iba a cumplir con un acuerdo verbal relacionado al gasto de educación privada del menor y que no constituyó propiamente una solicitud de revisión de pensión

---

[10] Apéndice 10 del recurso, a la pág. 21.
[11] Apéndice 11 del recurso, a las págs. 22-25.
[12] Apéndice 13 del recurso, a las págs. 27-29.

alimentaria. Abundó que, un acuerdo alcanzado por las partes en el año 2022, sobre la distribución de ciertos gastos educativos, y el posterior acuerdo extrajudicial en junio de 2024, no podía constituir una revisión de pensión alimentaria. Subrayó que era claro que la peticionaria en ningún momento había solicitado la revisión de pensión alimentaria en el año 2024.

A tenor, y, en resumidas cuentas, la peticionaria solicitó, mediante la antedicha solicitud, que se ordenara la revisión de la pensión alimentaria establecida en el año 2018, tomando en cuenta el tiempo transcurrido, los cambios en las circunstancias económicas de las partes y el incremento en las necesidades del menor, según solicitado desde el 3 de enero de 2025.

En respuesta, mediante *Orden*, emitida el 15 de abril de 2025, notificada el día 16, del mismo mes y año, el tribunal de instancia refirió nuevamente el caso al EPA para revisión.[13] Semanas más tarde, y recibido el referido, el EPA calendarizó la vista de revisión para el 10 de julio de 2025, y ordenó a las partes a presentar sus Planillas de Información Personal y Económica (PIPE).[14]

Luego, el 2 de mayo de 2025, el recurrido instó una *Urgente moción en oposición a referido al EPA por solicitud de revisión de pensión alimentaria alegando "cambio sustancial"*.[15] Detalló que, el 18 de junio de 2024, la peticionaria había presentado un escrito en el cual informó que presuntamente había llegado a un acuerdo "que modificaba los términos de la pensión establecida en el divorcio".[16] Adujo que en estricto derecho el documento suscrito por la peticionaria tenía el efecto de revisar la pensión establecida, y que, en el presente caso, no se había alegado ni evidenciado que existiese un cambio sustancial posterior al acuerdo alcanzado en junio de

---

[13] Apéndice 14 del recurso, a la pág. 30.
[14] *Íd.*, a la pág. 31.
[15] Apéndice 15 del recurso, a las págs. 32-34.
[16] *Íd.*, a la pág. 32.

2024. Razonó que la peticionaria no había colocado en posición al foro de instancia para poder adjudicar si procedía o no una revisión de pensión alimentaria. A tenor, peticionó que se dejara sin efecto el referido ante el EPA para revisar la pensión alimentaria, se confiriera validez y vigencia al acuerdo alcanzado entre las partes, y dejara sin efecto la solicitud de revisión de pensión alimentaria.

En respuesta, mediante *Orden*, emitida el 5 de mayo de 2025, y notificada el día 7, del mismo mes y año, el foro de instancia calendarizó la vista sobre revisión de pensión alimentaria para el 10 de julio de 2025, a la 1:30 p.m., y le requirió a las partes presentar sus Planillas de Información Personal y Económica (PIPE).[17]

Por otro lado, dos (2) días más tarde, mediante *Resolución*, emitida el 7 de mayo de 2025, notificada el día 12, del mismo mes y año, el tribunal recurrido acogió el escrito presentado por el recurrido y dispuso dejar sin efecto el referido al EPA, así como que dispuso que el acuerdo, de la moción del 18 de junio de 2024, fue voluntario y que cumplía con todos los requisitos legales.[18]

En desacuerdo con el antedicho dictamen, el 10 de junio de 2025, compareció ante nos la señora Ortiz Vázquez mediante un recurso acogido como *certiorari*, en el cual esgrimió el siguiente señalamiento de error:

> PRIMER ERROR: ERRÓ EL TPI, ABUS[Ó] DE SU DISCRECI[Ó]N Y VIOLENT[Ó] EL DEBIDO PROCESO DE LEY AL NO PERMITIR QUE SE EFECTUARA UNA VISTA ANTE [EL] OFICIAL EXAMINADOR DE PENSIONES ALIMENTICIAS.

Por su parte, el 20 de junio de 2025, compareció el recurrido mediante el *Alegato de la parte recurrida.* Habiendo el caso quedado perfeccionado procederemos a disponer del mismo.

---

[17] Apéndice 14 del recurso a la pág. 31.
[18] Apéndice 1 del recurso, a las pág. 1-2.

II

## A. Expedición del Recurso de *Certiorari*

Los recursos de *certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[19] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[20]
>
> [...].

Por su parte, la Regla 52.2 (b) dispone en cuanto a los términos y efectos de la presentación de un recurso de *certiorari* que:

> Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.
> [...].[21]

Establecido lo anterior, precisa señalar que el recurso de *certiorari* es un vehículo procesal que permite a un tribunal de mayor

---

[19] 32 LPRA Ap. V, R. 52.1.
[20] 32 LPRA Ap. V, R. 52.1.
[21] *Íd.*

jerarquía revisar las determinaciones de un tribunal inferior.[22] A diferencia del recurso de apelación, el auto de *certiorari* es de carácter discrecional.[23] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[24] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[25] Por otra lado, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime que el Tribunal deberá considerar los siguientes criterios para expedir un auto de *certiorari:*

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [26]

Precisa señalar que el Tribunal Supremo de Puerto ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error

---

[22] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).

[23] *Rivera Figueroa v. Joes's European Shop,* 183 DPR 580, 596 (2011).

[24] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).

[25] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, a la pág. 435.

[26] 4 LPRA Ap. XXII-B, R.40.

manifiesto.[27] Quiérase decir que, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción,  o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[28]

Finalmente, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos. Meramente, responde a la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia.[29]

### B. La Pensión Alimentaria

La Ley Orgánica de la Administración para el Sustento de Menores (Ley Núm. 5) aborda la política pública del Gobierno de Puerto Rico de que los padres y madres o las personas legalmente obligadas asuman la responsabilidad que tienen para con sus hijos.[30] A tales efectos, parte integral de la política pública es la  de  fortalecer los sistemas de determinación, recaudación y distribución de las pensiones alimenticias.[31]  Asimismo, este estatuto declara política pública del Gobierno procurar que los padres y madres o las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de sus hijos o dependientes.[32]

En específico, la Ley Núm. 5 dispone que los alimentos son "parte integral del derecho fundamental a la vida y a la subsistencia

---

[27] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[28] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[29] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008).
[30] Exposición de Motivos de la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, 8 LPRA sec. 501 nota *et seq.*
[31] Exposición de Motivos de la Ley Núm. 5, *supra.*
[32] *Íd.*, Artículo 3, 8 LPRA sec. 502

de la persona."[33]    Entiéndase que, "[s]e refiere a todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica según la posición social de la familia. También comprenden la educación e instrucción del alimentista menor de edad. [. . .].[34]

Una de las formas para establecer la aportación monetaria que cada padre debe asumir para suplir las necesidades de sus hijos menores de edad es mediante una orden de pensión de alimentaria, la cual será producto de un descubrimiento de prueba amplio a los fines de descubrir la situación económica de cada alimentante.[35] La Ley Núm. 5 define una orden de pensión alimentaria como:

> [c]ualquier determinación, resolución, orden, mandamiento o sentencia para fijar, modificar, revisar o hacer efectivo el pago de una pensión por concepto de alimentos, plan o seguro médico, emitida a tenor con los Reglamentos y las Guías mandatorias para computar las pensiones alimentarias en Puerto Rico [. . .] por un Tribunal del Estado Libre Asociado de Puerto Rico, o mediante el procedimiento administrativo establecido en esta Ley [. . .]. [36]

Los progenitores igualmente pueden llegar a acuerdos sobre lo que cada uno aportará para el sustento del menor. Ahora bien, en los referentes a estos acuerdos, se ha razonado que los tribunales deberán cerciorarse de que son de beneficio para el menor de edad.[37]

Las Guías Mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico (Guías Mandatorias)[38] proveen para dos (2) tipos de pensiones alimentarias: la básica y la suplementaria.[39] La primera se refiere a la "[c]antidad monetaria que la persona no custodia debe proveer para el pago de gastos básicos en los que es necesario incurrir para la crianza del alimentista. Esta incluye aquellos gastos por concepto de alimentación, servicios públicos o utilidades, transportación, entretenimiento y vestimenta (excepto

---

[33] Artículo 2 (7) de la Ley Núm. 5, 8 LPRA sec. 501.
[34] *Íd.*
[35] *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 564 (2012).
[36] Artículo 2 (29) de la Ley Núm. 5, *supra.*
[37] *McConnell v. Palau*, 161 DPR 734, 748 (2004).
[38] Reglamento Núm. 9535 del 16 de febrero de 2024.
[39] *Santiago, Maisonet v. Maisonet Correa*, supra, a la pág. 563.

gastos de uniforme)".[40] Por su parte, la pensión alimentaria suplementaria es una "[c]uantía que la persona no custodia debe destinar para pagar la parte proporcional que le corresponde por concepto de gastos suplementarios".[41]

Cabe destacar que la antes mencionada Ley Núm. 5, establece las condiciones que se deben cumplir para revisión de una orden o acuerdo de pensión alimentaria. A tales efectos, el Artículo 2 (38) de dicha ley establece que la revisión de la pensión es una:

> "[n]ueva consideración o examen de la pensión que se efectúa cada tres (3) años luego de que fuera originalmente fijada o modificada o antes del término de tres (3) años previamente señalado, si cualquiera de las partes puede demostrar que ha ocurrido un cambio sustancial en las circunstancias de la persona custodia, de la persona no custodia o del menor alimentista".

Entiéndase que, de ordinario, la pensión alimentaria debe revisarse luego de haber transcurrido tres (3) años desde que fue establecida. Ahora bien, se ha razonado que "los dictámenes sobre pensión alimenticia siempre están sujetos a cambio, según varíen las circunstancias de los alimentistas o del alimentante". Nuestro Tribunal Supremo expresó sobre este particular que, si impidiéramos el uso de este vehículo procesal, el principal perjudicado sería el menor de edad.[42] Así, pues, denegar el uso de la revisión de pensión por un "tecnicismo procesal" equivaldría a abdicar el deber de salvaguardar el bienestar de los menores de edad".[43]

Por último, precisa recordar que, en nuestra jurisdicción, el derecho a los menores a recibir alimentos emana de la cláusula constitucional del derecho a la vida consagrado en nuestra Constitución.[44] De manera que, estos casos están revestidos del más

---

[40] Artículo 5 (32) del Reglamento Núm. 9535, *supra.*
[41] *Íd.,* Articulo 5 (35).
[42] *Ex parte Negrón Rivera y Bonilla*, 120 DPR 61, 73 (1987).
[43] *Ex parte Negrón Rivera y Bonilla*, supra, a la pág. 73.
[44] *Díaz Rodríguez v. García Neris*, 208 DPR 706, 717 (2022).

alto interés público, siendo siempre el interés principal, el interés óptimo del menor. [45]

### III

En su único señalamiento de error, la peticionaria nos convida a intervenir con una determinación del foro primario, emitida luego de un vaivén de escritos presentados por las partes, sobre asuntos relacionados a la pensión alimentaria a favor del menor, hijo de las partes. En esencia, muestra su inconformidad luego de que el foro de instancia refirió el caso al EPA y se señaló la correspondiente vista, para luego, mediante la *Resolución* recurrida, dejar sin efecto el antedicho curso de acción, acogiendo, además, un presunto acuerdo verbal entre las partes, relacionado a un gasto educativo de escuela privada.

Según reseñamos previamente, las partes del título disolvieron su vínculo matrimonial mediante *Sentencia* de divorcio por consentimiento mutuo, en el año 2018. En lo atinente, se desprende que, en cuanto a la pensión alimentaria, cada progenitor se haría cargo de los gastos del menor y que, con relación a los gastos extraordinarios, la proporción sería al 50%. Quiérase decir que, en efecto, en el presente caso no se estableció una pensión alimentaria básica, empero, se estableció una especie de pensión alimentaria suplementaria a la cual le nombraron gastos extraordinarios, los cuales se sufragarían en la proporción antes mencionada. Según reseñamos previamente, distinto a la pensión alimentaria básica, la suplementaria es una "[c]uantía que la persona no custodia debe destinar para pagar la parte proporcional que le corresponde por concepto de gastos suplementarios".[46]

Dicho lo anterior, se desprende de los autos ante nuestra consideración que no fue hasta al cabo de seis (6) años que la

---

[45] *Díaz Rodríguez v. García Neris*, supra, a la pág. 717.
[46] Artículo 5 (35) del Reglamento Núm. 9535, *supra*.

peticionaria acudió ante el foro primario con una solicitud para corroborar un alegado acuerdo verbal, en virtud del cual, el recurrido sufragaría la totalidad de un gasto educativo de escuela privada. De su solicitud también se desprende que, en caso de que no fuese así, la peticionaria evaluaría alternativas. El foro primario concedió un término para que las partes presentaran un escrito conjunto, pero dicha orden no fue cumplida. Luego, el 18 de junio de 2024, la peticionaria informó que las partes habían llegado a un acuerdo extrajudicial, y en síntesis, solicitó el archivo de su solicitud. Recibido el escrito, el foro de instancia le requirió que dicha solicitud debía ser presentada con la firma y juramento de ambas partes. Dicha orden nunca se cumplió.

Ahora bien, en su recurso, la peticionaria plantea, en síntesis, que, a esta fecha, no podía el tribunal de instancia entender que el alegado acuerdo verbal podía constituir una revisión de pensión alimentaria. Estamos de acuerdo. Conforme puntualizamos, la revisión de pensión, según definida por la Ley Núm. 5, de ordinario, es una "[n]ueva consideración o examen de la pensión que se efectúa cada tres (3) años luego de que fuera originalmente fijada o modificada" [. . .]. De manera que, no podríamos avalar que un presunto acuerdo verbal constituyó una nueva consideración o un examen de la pensión. Más aun, cuando este procedimiento se lleva a cabo por un tribunal de justicia o mediante el procedimiento administrativo provisto por la ley. Lo anterior, para que pueda constituir una obligación legal y no moral.

Establecido lo anterior, y sin el ánimo de resultar reiterativos, es de ver que conforme surge de los autos ante nuestra consideración, las partes han estado inmersas en una inestabilidad procesal desde el año 2024. El foro de instancia recibió una solicitud para que se aclarara un asunto relacionado a un gasto educativo del menor que, presuntamente, fue acordado de forma

extrajudicial entre las partes, pero, luego, la peticionaria solicitó que se diese por concluido el incidente. El foro de instancia, al atender la solicitud, despachó el pedimento con un requerimiento de que dicha moción debía estar firmada y juramentada por ambas partes, cosa que nunca ocurrió.

Luego, pasado varios meses, desde el mes de enero de 2025, se encuentra trabada una controversia sobre si procedía o no una revisión de pensión alimentaria, asimismo el foro de instancia ha referido y señalado vistas ante el EPA, para luego dejarlas sin efecto. Vemos que, desde el mes de enero de 2025, los reclamos han sido diversos. En *primer* lugar, la peticionaria alegó ciertos cambios sustanciales en torno a ciertos gastos suplementarios. En *segundo* lugar, presentó otro escrito por una alegada merma en sus ingresos. En *tercer* lugar, incoó una solicitud relacionada al asunto que nos ocupa, para que la pensión alimentaria fuese revisada por haber transcurrido más de seis (6) años desde que se estableció la pensión alimentaria y por cambios en las circunstancias.

Sin embargo, referido el caso al EPA, pero, previo a que se dispusiera sobre el señalamiento de vista, el recurrido se opuso. De ahí, el foro *a quo* emitió dos (2) órdenes que resultan ser inconsistentes entre sí, a los fines de la disposición de este recurso. Una es la *Orden* emitida el 5 de mayo de 2025, y notificada el día 7, del mismo mes y año, en la cual se calendarizó la vista de revisión de pensión alimentaria y la otra es la *Resolución* emitida el 7 de mayo de 2025, y notificada el día 12, del mismo mes y año, mediante la cual, se dejó sin efecto el referido al EPA y se dispuso sobre el alegado acuerdo verbal.

Como es sabido, un tribunal apelativo no intervendrá con el ejercicio de la discreción de los Tribunales de Primera Instancia, salvo que se demuestre que dicho tribunal actuó con perjuicio o parcialidad, o que se equivocó en la interpretación o aplicación de

cualquier norma procesa o de derecho sustantivo.[47] Puntualizamos, que el *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior.[48] A esos efectos, la naturaleza discrecional del recurso de *certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección. Por ello, la intervención a través del recurso de *certiorari* tiene que anclarse en una de las razones de peso que establece la Regla 40 del Reglamento del Tribunal de Apelaciones.[49]

Tras evaluar minuciosamente el recurso presentado por la peticionaria, la oposición del recurrido, y luego de una revisión de la totalidad del expediente ante nos, es nuestra apreciación que se configuran las instancias que justifican la expedición de este auto de *certiorari*. Ello, puesto a que coincidimos que nos encontramos ante una determinación en la cual el foro primario excedió su discreción. Lo anterior, radica en haber dejado sin efecto el referido al EPA, lo cual convirtió en académico el señalamiento de vista, y en haber acogido el presunto acuerdo verbal entre las partes como uno válido y legal. Al haber actuado como tal, violentó el debido proceso de ley a la peticionaria, pero, sobre todo, al menor hijo de las partes, quien constituye el interés superior en este tipo de casos. Agregue que el foro *a quo* no evaluó, conforme dispone nuestro ordenamiento jurídico, cualquier alegado acuerdo al que estuviesen dispuestas a llegar las partes con el fin de incluirlo como parte de una orden de pensión alimentaria.

Del expediente ante nuestra consideración se desprende que la última orden de pensión alimentaria fue establecida mediante la

---

[47] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).
[48] *Pueblo v. Díaz León,* 176 DPR 913, 917 (2009).
[49] 4 LPRA Ap. XXII-B, R. 40.

sentencia de divorcio entre las partes, es decir, hace más de seis (6) años. Igualmente, se desprende de los autos que la peticionaria notificó al foro de instancia que ocurrió un cambio en las circunstancias, lo cual ameritaba revisar la pensión alimentaria del menor. De manera que, se cumplieron todas las condiciones establecidas en la aludida Ley Núm. 5 para examinar la pensión alimentaria, y no había impedimento para ello.

Por otro lado, en lo relativo al acuerdo verbal presuntamente alcanzado entre las partes, cabe resaltar que, aunque el juzgador de instancia les solicitó que le entregaran el referido acuerdo jurado y firmado por ambos, esto nunca se cumplió. Lo anterior era neurálgico para que el foro de instancia pudiese determinar su alcance y evaluar de forma objetiva si el mismo obraba en el interés óptimo del menor.   Lo anterior, no ocurrió.

En nuestra previa exposición doctrinal puntualizamos, que, aunque no está prohibido que los progenitores, por acuerdo verbal, establezcan de qué manera suplirán las necesidades del menor, los tribunales deben cerciorarse de que dicho acuerdo opere en beneficio de este último. [50] Según consta del expediente del presente caso, el tribunal de instancia no contaba con los elementos para poder determinar si el acuerdo operaba a favor del interés óptimo del menor. Asimismo, precisa recordar las palabras del Tribunal Supremo, cuando expresó que un mero tecnicismo no puede impedir el uso del mecanismo de la revisión de pensión ya que el principal perjudicado terminaría siendo el menor de edad. [51]  Visto lo cual y luego de estudiar cuidadosamente la totalidad de los autos ante nuestra consideración, juzgamos que constituye un error que amerita la revocación de la resolución objeto de revisión, la determinación del tribunal *a quo* mediante la cual, dejó sin efecto el

---

[50] *McConnell v. Palau*, supra, a la pág. 748.
[51] *Ex parte Negrón Rivera y Bonilla*, supra, a la pág. 73.

referido al EPA y en la cual dio por bueno el acuerdo entre las partes del título. Colegimos que el curso seguido por el foro de instancia no fue en beneficio del interés óptimo del menor.

En consecuencia, nos es forzoso concluir que el error esgrimido por la peticionaria se cometió. El foro de instancia falló al privar al menor de que se revisara la pensión alimentaria impuesta a su favor, la cual evidentemente no ha sido objeto de un proceso de revisión conforme a derecho, desde la fecha del divorcio de las partes. Abona a lo anterior que el presunto acuerdo alcanzado por las partes no ha sido objeto de la evaluación que requiere nuestro marco doctrinal para determina si opera en el interés óptimo del menor hijo de las partes. De manera que, procede expedir el recurso ante nuestra consideración para revocar *Resolución Recurrida.*

IV

Por los fundamentos que anteceden, se *expide* el auto de *Certiorari* y se *revoca* la *Resolución* recurrida. En mérito de lo anterior, se restablece lo dispuesto en la *Orden* emitida el 5 de mayo, y notificada el día 7, del mismo mes y año, mediante la cual se ordenó la revisión de la pensión alimentaria y se refirió el caso al EPA. En consecuencia, y en atención a la Regla se devuelve el caso al tribunal de instancia para celebre la vista de revisión de pensión alimentaria programada para el 10 de julio de 2025 y como parte de esta, evalúe la voluntariedad y el alcance del alegado acuerdo verbal entre las partes que data del año 2024.

**Al amparo de la Regla 35 (A)(1) de nuestro Reglamento,[52]el Tribunal de Primera Instancia puede proceder de conformidad**

---

[52] Regla 35 (A)(1): "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**." 4 LPRA Ap. XXII-B R. 35.

**con lo aquí resuelto, sin que tenga que esperar por nuestro mandato.**

   **Notifíquese inmediatamente.**


   Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones